## Wikler v. Mar-Van Industries, Inc.

*Michael L. Moody,* for plaintiff.
*Kenneth T. Ulrich,* for defendant.

KELTON, *J.,* March 2, 1984—Defendant Mar-Van Industries, Inc. (Mar-Van) has appealed to the Superior Court from our entry of judgment of $30,476.65 plus interest following dismissal of exceptions to a decision in favor of plaintiffs Irving Wikler (Wikler) and Futura Marble Co., Inc. (Futura) rendered after nonjury trial before the undersigned.

Plaintiffs had sued in assumpsit to recover the balance allegedly due them under an oral agreement for the sale of the tangible and intangible assets of Futura to Mar-Van. The latter's president, Gerry Geroni, has denied that any agreement was ever finalized and also argues that the agreement was unenforceable because of the statute of frauds.

Prior to the events in controversy, Wikler had operated through Futura a wholesale business to manufacture and sell synthetic marble tops at leased premises at 1721 North Randolph Street, Philadelphia. In about February, 1981, Wikler and Geroni orally agreed that Mar-Van would buy all of the Futura business assets, which consisted principally of molds, manufacturing equipment and other tangible assets plus the intangible assets such as good will and customer lists. We credited plaintiff Wikler's testimony that a $50,000 purchase price was specifically agreed to with $10,000 to be paid down and the balance to be spread over two years. It was also agreed that Wikler was to remain on salary to assist in keeping the business going and that the business would continue to operate at the same address. Thereafter, the customer lists were transferred, the business telephone number was changed, a new lease was negotiated with the land-

lord, payments of $9,999.87 were made to plaintiffs on account of the purchase price and Mar-Van took control of all of the molds and specialized equipment. Thereafter it operated the business at plaintiffs' old address. Wikler remained on defendant's payroll until about September 1981.

After assuming possession, however, Mar-Van and Geroni later denied that the price and other terms of sale had been agreed to and then refused to pay the balance of the purchase price.

We found defendant Mar-Van's testimony as to the events leading up to the agreement and transfer of the assets to be almost completely incredible and accepted plaintiffs' version of the events. We thus concluded that plaintiffs were entitled to recover the purchase price less credits calculated as follows:

| | | |
|---|---|---|
| Purchase Price | | $50,000.00 |
| Less Credits: | | |
| Payments on Account | $9,999.87 | |
| Credit for customer payments received by plaintiff | 2,524.48 | |
| Payments to third person for equipment not owned by plaintiff | 7,000.00 | |
| Total credits | | 19,524.35 |
| Balance of purchase price due | | $30,476.65 |

We found that corporate defendant Mar-Van was liable but that Geroni, individually, was not. Mar-Van's exeptions to our decision were overruled and judgment was entered thereon

Defendant's principal contention on appeal is that its objection to receipt of the evidence of the agreement should have been sustained on the ground

that: "It's an oral contract, and in the realm of the Statute of Frauds . . .."

Section 2201 of the Commercial Code, 13 Pa.C.S. §2201 provides:

"(a) General Rule. Except as otherwise provided in this section a *contract for the sale of goods* for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom the enforcement is sought

. . .

"(c) Enforceability of contracts not satisfying general requirements. *A contract* which does not satisfy the requirements of subsection (a) but which is valid in other respects *is enforceable:* . . .

"(3) *with respect to goods for which payment has been made or accepted or which hae been received and accepted* (section 2606)." (Emphasis supplied.)

Section 2606 of the code provides that acceptance of goods occurs when the buyer fails to make an effective rejection or "does any act inconsistent with the ownership of the seller. . . .."

We believe that we correctly held that the property had been "received and accepted" under section 2201(c)(3) and that the statute of frauds should not bar recovery.

First, we believe that the molds, compressors, valves, cement mixers, fans, templates and related equipment which furnished the great bulk of the purchase price were clearly "goods" within the meaning of the act. Under section 2105 of the code, that term means: ". . . all things (including specially manufactured goods) which are moveable at the time of identification to the contract of sale. . . ." The fact that a minor unallocated portion of the total purchase price of the busines may also have includ-

ed good will, customer lists and phone numbers and similar intangibles does not change the essential character of the transaction as a whole from being a sale of "goods." See DeFilippo v. Ford Motor Company, 516 F.2d 1313, 1323 (C.A.3d, 1975), and compare Field v. Golden Triangle Broadcasting, Inc., 451 Pa. 410, 305 A.2d 689 (1973), cert. denied 414 U.S. 1158. Here, according to plaintiffs' estimates of the value of the tangible items included in the sale, $49,500 out of the total $50,000 purchase price of the business represented moveable items of factory equipment and inventory and according to defendant's testimony the only thing he bought was equipment. In either event, the transaction was a sale of "goods" and section 2201 should be applied.

In doing so, however, we also conclude that defendant has not only made a partial payment for the property but has "received and accepted" the goods within the meaning of section 2201(c)(3). Therefore the statute of frauds does not bar recovery. Compare Macy v. Oswald, 198 Pa. Super. 435, 182 A.2d 94 (1962) (completed sale of gas station business); In re Country Store Products, Inc.; 21 Bankruptcy Reporter 28 (1980) (sale of candle making equipment). Here, defendant has conceded that it took over plaintiff's former plant and began its manufacturing operation at plaintiff's location because:

"[E]very thing in here was in there and hooked up and working. They had the labor force already there so I signed a lease for two years. I figured that in two years I could relocate that business further up here into Bucks County. That's why I made a deal with them to stay there for two years." Clearly, after the sale, defendant exercised total dominion over everything which plaintiffs had owned and started business with plaintiffs' goods. He even put individual plaintiff on defendant's payroll.

After trial, defendant argued for the first time that section 1206 of the Commercial Code should bar recovery of anything over $5,000. Although we believe that this argument has been waived because it was not preserved at trial, we find in any event that section does not apply to a sale of "goods" under section 2201. See 13 Pa.C.S. §1206(b).

Defendant's remaining matters complained of in its statement of matters complained of under Pa.R.A.P. 1925 (b) (points 2, 3 and 4) all relate to its disagreement with the trial judge's credibility findings that plaintiff Wikler was credible and defendant Geroni was not. We believe that these findings were for the trial judge and need not be disturbed. Assuming the correctness of the credibility findings, the clear weight of all the evidence supported the trial judge's findings that the agreement took place as testified to by Wikler and his son.

We entered judgment for the foregoing reasons.

### ORDER

And now, December 22, 1983, defendant Mar-Van Industries, Inc.'s exceptions to the findings and decision of the trial court are overruled and judgment is hereby entered on the verdict in favor of plaintiffs Irving Wikler and Futura Marble Co., Inc. and against defendant Mar-Van Industries, Inc. only in the amount of $30,476.65, together with interest at the legal rate from April 2, 1982.